Andrews, J.
After a careful examination of this case I have reluctantly come to the conclusion that the application for the discharge of the petitioner must be granted. There is no dispute about the facts upon which the order of arrest was obtained. Caamano, having in his possession a large *241 sum of money belonging to Mrs. Boderiguez, who resided in Spain, used the same for his own purposes, and then, under a power of attorney which he held, raised $40,000 more by mortgaging Mrs. Boderiguez’s real estate, which was situated in Hew York, and used this sum in the same manner. The latter transaction was so deliberately planned, and so carefully and coolly carried out, as to leave no possible doubt that he is a man who hesitates at nothing to accomplish his purposes. He has no possible claim upon the sympathy or tender consideration of the court, and' did the law permit it would be but justice that he should be imprisoned for a long term of years. He must, however, be accorded the rights secured to him by the laws of this state, and I am of the opinion that, upon complying with the provisions of the Code, he must be discharged.
In Suydam agt. Belknap (20 Hun, 87), which was an application like this, the petitioner was arrested for converting to his own use moneys and securities belonging to the plaintiff while acting in a fiduciary capacity and was imprisoned in default of $35,000 bail. He applied for a discharge, and his examination showed that in violation of his trust he had used the money and property for his own benefit. It was, nevertheless, held by Mr. justice Westbrook that he was entitled to his discharge, because it did not appear that he had disposed or made over any part of his own property with a view to the future benefit of himself or his family, or with intent to injure or defraud any of his creditors. On appeal the order for the discharge was affirmed. The court at general term said: “ This case is distinguishable from that In re Brady (69 N. Y., 215), because the charge is that the defendant received money in a fiduciary capacity for which he has not accounted. The defendant Brady was charged with a disposition of his property with the intention of defrauding his creditors, and for that reason it was held that his proceedings were not just and fair. This case does not show any appropriation of this kind, and therefore that he has property *242 attainable by recourse to his grantee or otherwise. The money received was disposed of by him, and though improperly used does not subject him to the rule established by the case referred to. We cannot say under the circumstances that his proceedings have not been just and fair.”
It seems to me that this case is decisive of the present application. With regard to the first money appropriated by Caamano the cases are identical. With regard to the $40,000, the learned counsel for the plaintiff claims that the decision in Suydam agt. Belknap, is not applicable, because the money was obtained through a mortgage, and when it came into Caamano's possession was to be regarded as his money, and that he has therefore disposed of his own money with intent to defraud his creditors, or for the future benefit of himself or members of his family.
I am not able to concur in this view. From a moral standpoint Caamano’s conduct in raising money by mortgaging his principal’s property, and then appropriating it to his own use, was, if possible, more infamous than in so appropriating moneys which had lawfully come into his possession, for in the former case he committed a double crime. This, however, does not change the legal aspect of the matter. The $40,000 was not in the eye of the law his money, but that of Mrs. Eoderiguez, and when he appropriated it he was disposing of her money and not his own. So far as this application is concerned the $40,000 must be regarded as money which, though obtained by a previous fraud, was held by Caamano in a fiduciary character, and upon a trust, which the law would imply to pay it over to Mrs. Eoderiguez, whose property had been incumbered to raise it. Viewed in this light, the decision in Suydam agt. Belknap, is just as applicable to the $40,000 as to the moneys previously appropriated, and I am constrained by it to hold that Oaamano is entitled to his discharge.
The distinction between cases like the present one and that presented In the Matter of Brady (69 N. Y., 216), is pointed *243 out in the opinion of the general term. In the latter case the petitioner had disposed of his own property with intent to defraud the creditors who opposed his discharge, and the affidavit required by the statute that he he had not done so was therefore untrue, and his proceedings were held not to be just and fair. It may well be, as was held in In the Matter of Roberts (59 How., 136), that it is worse for the debtor to dispose of the creditor’s property than for him to dispose of his own, and that the former act as well as the latter ought to prevent his discharge. It is not, however, so provided in the statute, and the views of the learned judge who decided the Roberts case were expressly disapproved by the general term of the court of common pleas (In re Fowler, 8 Daly, 85). Counsel for the plaintiff also calls attention to the fact that portions of the fund with which the $10,000 was mingled were given by Caamano to his wife, his brother and brother-in-law, and claims that his conduct “ does not make it a violent supposition that he purposely turned over a large part of Mrs. Roderiguez’s property for the future benefit of himself and various members of his family.
Of course, if he had disposed of Mrs. Roderiguez’s property in this manner, he could not be discharged. The burden of proof, however, to show such disposition of her property is on the plaintiff (In the Matter of Benson, 10 Daly, 166). Rot only is such disposition not shown by the plaintiff, but the examination of the debtor, which stands uncontradicted, establishes the contrary. The testimony is that the real estate conveyed to his wife was inherited by her from her mother, and a satisfactory explanation is given why the title was taken in Caamano’s name and of the subsequent conveyance. The testimony is also to the effect that the payments to his relatives were for full consideration out of moneys that belonged. to them. There is no evidence that Caamano disposed of his own property or that of Mrs. Roderiguez for the future benefit of himself or members of his family, or with intent to defraud his creditors, and an order must be granted directing him to *244 execute an assignment to a trustee, and that he be discharged upon complying with the provisions of the Code relating to the assignment and delivery of his property.